UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHYLLIS JEAN LOVE            :
                             :
                             :
                             :
                             :
                             :   CIVIL ACTION NO.:
V.                           :   CCB-04-3070
                             :
                             :
                             :
ROBERT SMITH ET AL.          :
                             :
                             :
                             :

## MEMORANDUM

Now pending before the court is a motion to dismiss and a motion to strike filed by defendants. The issues in these motions have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons stated below, the defendants' motion to dismiss will be denied in part and granted in part, and their motion to strike will be granted.

## BACKGROUND

The following facts are taken from the complaint and the documents attached thereto and incorporated by reference.[1] The plaintiff, Phyllis Jean Love ("Love"), has been employed by the defendant Maryland Transit Administration ("MTA"), a state agency within the Maryland Department of Transportation ("MDOT"), since 1978. (Compl. ¶ 19.) On February 8, 2002, Love was promoted

---

[1] The defendants protest that the plaintiff has raised new factual allegations and legal arguments in her opposition papers and attached new exhibits that were not originally referenced in the complaint. (*See* Defs.' Reply at 3.) In keeping with the Rule 12(b)(6) standard, I confine my analysis to the facts presented in the plaintiff's complaint and the exhibits attached thereto and incorporated by reference.

to the position of Manager of Bus Operations by Virginia White, acting Administrator of the MTA. (*Id.* ¶ 16.) She apparently assumed this role on an acting or interim basis. According to Love, both she and Ms. White were the first women to hold such senior positions within the agency. (*Id.* ¶ 16.) As Manager of Bus Operations, Love was responsible for managing the largest department in the MTA. She created policy, monitored productivity, managed the budget, and represented the agency in labor related issues as well as disciplinary adjudications. (*Id.* ¶ 17.) According to Love, throughout her tenure with the MTA her job performance was rated highly, including her last performance appraisal in April 2002 by Virginia White. (*Id.* ¶ 18.)

In the spring of 2002, a significant public safety concern arose when wheels began falling off city buses. According to the plaintiff, White was forced to resign from her position on or about June 7, 2002. (*Id.* ¶ 16.) After White's resignation, Maryland Transportation Secretary John Porcari and his "audit team" assumed management of the MTA on an interim basis. (*Id.* ¶ 26.) Around this time, Love began to be excluded from management activities and decision-making meetings. For example, on or about June 6, 2002, Secretary Porcari visited all bus operating divisions. Although Love should have been responsible for accompanying him on these visits, because the divisions were under her authority, she alleges that at no time was her input or presence requested. (*Id.* ¶ 23.) Her male subordinate, John Lewis, however, was asked to accompany Secretary Porcari. Love contends that during all other similar visits or inspections, Porcari was accompanied by male "mode managers" who were similarly situated to her. (*Id.*) On June 10, 2002, the former MDOT chief of staff, D'Andrea Lancelin, was allegedly sent by Secretary Porcari to block Love's entrance into a management meeting. (*Id.* ¶ 21.) Love alleges that decisions were made at this all-male meeting regarding issues normally under her

purview, and that while she was purposefully excluded from the meeting, her subordinate, John Lewis, was included. (*Id.*) Similarly, on June 12, 2002, Love was not invited to or allowed to participate in a meeting of all key management personnel called by Secretary Porcari. (*Id.* ¶ 22.) Love alleges that prior to the meeting, while standing with her subordinate John Lewis, the Director of Engineering and Procuring for the MDOT, John Contestable, approached them and stated that Secretary Porcari wanted to meet with key managers, indicating that "[t]hat means you, John." (*Id.*) Also on June 12, 2002, while meeting with MTA's legal counsel, Callista Freedman, on an unrelated matter, Love discussed the MTA initiative to draft a written policy concerning the Family Medical Leave Act. According to Love, Freedman advised her that a meeting on the topic had already taken place without Love, and that, in her view, "it was obvious that the 'good ole boys' were going to side together against the women." (*Id.* ¶ 24.)

On June 13, 2002, Love was informed by her immediate supervisor, Wayne Jubb, former Deputy Director of Bus Operations, that she was being removed from her position and being reassigned to an unclassified position in the Schedule Department. (*Id.* 19.) According to Love, Jubb told her that she had done nothing wrong and that she was being removed from her position "because they could." (*Id.* ¶ 28.) This transfer constituted a demotion, as she was moved from a Grade 23 Administrator level to a Grade 22 level, with a resulting pay decrease in the amount of $206.16 each biweekly pay period. (*Id.*) According to the plaintiff, she was demoted without cause because she was not responsible for any of the bus safety concerns that the MTA and MDOT later claimed justified her removal. (*Id.* ¶ 34-35.) She maintains that no other similarly situated male manager, including those responsible for bus mechanics and safety, was removed or demoted at this time. (*Id.* ¶ 35.) As a

3

result of the demotion, Love alleges she was moved from the largest executive office to a small cubicle normally reserved for first level supervisors.  She claims she was denied the use of a vehicle, cell phone, and pager, though previously these benefits were provided to her by the MTA.  She also contends that she was not provided a job title, or a description of her duties, and therefore was limited in her ability to apply her knowledge and skills to assist the agency and to advance her career.  (*Id.* ¶ 20.)  Love also alleges that she was denied the opportunity to compete for the Manager of Bus Operations position on a permanent basis, although she had submitted an application and had been deemed "duly qualified" by the Personnel Office.  She asserts that she was more qualified than John Lewis, the person ultimately selected for the job, and claims he did not meet the minimum requirements.  Additionally, she contends that her interim replacement for the position, Michael Hannan, told her that although he expressed no interest in the job nor did he apply, he was recruited for the position by Beverly Swain-Staley, deputy to Secretary Porcari.  (*Id.* ¶ 25.)

On December 11, 2002, Love filed a charge of discrimination based on sex with the Maryland Human Relations Commission ("MHRC"), which in turn automatically filed a charge with the Equal Employment Opportunity Commission ("EEOC").  The MHRC investigated the plaintiff's charge and on February 24, 2004 issued its initial determination that there was no probable cause to believe that the plaintiff was discriminated against on the basis of sex when she was demoted.  (*Id.* ¶ 4.)  The MHRC found that the plaintiff had been promoted to the Manager of Bus Operations position in an acting capacity, and that she had been removed from this position because in the spring of 2002 there were a "series of problems involving public safety and poor service quality....which raised the specter of poor bus maintenance."  (*Id.* ¶ 27; Ex. 3, MHRC Report.)  The MHRC also noted that Love "was told

that she had done nothing wrong and she was reassigned to another position commensurate with her grade," and that she "contends that she was never told that she was being removed from the position because of problems related to public safety and poor service quality." (Ex. 3 at 2.) The MHRC report also stated that Love "agrees that her removal from the Manager of Bus Operations resulted from incidents regarding wheels falling off buses; however she did not accept responsibility for what occurred." (Ex. 3 at 2.) Ultimately the MHRC determined there was no evidence indicating that her removal was gender related or that "a male in a similar situation would have been treated more favorably." (*Id.*)

On March 10, 2004, Love filed a request for reconsideration with the MHRC, which denied her request on April 8, 2004 and advised her to pursue her complaint with the EEOC. After the plaintiff filed her complaint with the EEOC on April 22, 2004, the EEOC reviewed the findings of the MHRC but did not undertake any evidentiary or investigative proceedings. (*Id.* ¶ 7.) Love then requested and was granted a meeting with John Gowland, General Manager of the MTA, and informed him of "insensitive remarks made by a male colleague" related to her status as Manager of Bus Operations, a position the colleague knew she had been removed from. (*Id.* ¶ 38.) The plaintiff alleges that although this meeting put Gowland on notice of the alleged continuing discriminatory treatment suffered by plaintiff, no action was taken by him to address the situation. (*Id.*) On July 1, 2004, Love received a right to sue letter from the EEOC, which indicated that the agency had adopted the findings of the MHRC. (*Id.* ¶ 8; *see* Ex. 1, EEOC Right to Sue Notice.) On July 20, 2004, Love learned that she was being demoted again and that she had been reassigned to a position that was two grades lower. (*Id.* ¶ 42.) She contends that she was not informed directly of this demotion, and had to

5

contact her immediate supervisor, Robert Mowry, in order to confirm the reassignment. (*Id.*) According to Love, Mowry explained to her that she had been targeted for dismissal, and that he had interceded on her behalf because he did not want to lose a knowledgeable and experienced employee like her, but that he was not permitted to place her in any positions commensurate with her classification that were open and available, including her former position. (*Id.*) Similarly, Love contends that on July 23, 2004, she was informed by William Cowan, a colleague, that he had heard from Jennifer Jenkins, the former Director of Personnel, that Love was targeted for termination by John Gowland, general manager of the MTA, because of her discrimination complaint. (*Id.* ¶ 40.) She maintains that since April 2002, she has not been reviewed, held a classified position, been disciplined, or counseled that her performance is in any way less than "exceeding job requirements." She further contends that she has been kept in an unclassified position in order to make it easier to continue to demote her or to ultimately fire her, in retaliation for her protected activity. (*Id.* ¶ 43.)

According to Love, as a result of the alleged discriminatory and retaliatory practices described above, she has suffered from "acute emotional distress" and physical ailments that have required medical treatment. (*Id.* ¶ 44.) She states that because of her stress-induced illnesses, she has used 140 days of sick leave, as well as her vacation time and additional leave, because her physician did not approve of her returning to work due to the stress caused by the defendants' actions. She contends that she continues to suffer from situational depression, acute migraine headaches, sleeplessness, and anxiety, for which she is taking prescription medications. (*Id.*)

On September 24, 2004, Love filed suit in this court against the MTA, the MDOT, and several individuals, including: Robert Smith, the administrator of the MTA since July 2002; John Porcari, the

former Secretary of MDOT; and Robert Flanagan, the current Secretary of the MDOT. The complaint alleges sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § § 2000e, *et seq.*). Love also brings a separate claim for deprivation of property and liberty interests in violation of her constitutional due process rights under 42 U.S.C. § 1983. Love seeks an injunction enjoining defendants from further discriminatory actions and reinstating her to her position of Manager of Bus Operations, or a substantially similar position with the same supervisory grade and pay rate; front pay at the top of Grade 23; back pay in the amount of $11, 545. 96, plus interest; and compensatory damages in the amount of $825,574.78 for medical expenses and pain and suffering. She also seeks full restoration of annual leave, specifically, 140 days of sick leave that she used as a result of her stress-induced medical problems. Love is also requesting a jury trial and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

**I. Standard of Review**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

## II. Analysis

Before reaching the merits of the case, I will first address the defendants' motion to strike the plaintiff's surreply. The defendants moved to dismiss the plaintiff's complaint, the plaintiff responded in opposition, and, as is customary, the defendants submitted a reply. The plaintiff then submitted a second response in opposition, raising additional arguments and attaching exhibits that were not included in the plaintiff's earlier filings. The defendants moved to strike the plaintiff's surreply, arguing that the plaintiff violated Local Rule 105.2 when she submitted the additional motion without the court's permission. Under Local Rule 105.2, "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Surreplies may be permitted when a party would otherwise not have an opportunity to address arguments presented to the court for the first time in the opposing party's reply. *Khoury v. Meserve,* 268 F.Supp. 2d 600, 605 (D.Md. 2003), *aff'd* 112 Fed. Appx. 923 (4th Cir. 2004). That is not the case here. There were no new issues or arguments raised in the defendants'

reply. The plaintiff's surreply focuses on whether the defendants were on notice of the continuing nature of the plaintiff's discrimination complaint, an issue which was first raised in the defendants' motion to dismiss, and therefore the plaintiff had an opportunity to address the matter in her opposition brief. For these reasons, and because allowing continued briefing would not serve the efficient administration of justice, the plaintiff's surreply and accompanying exhibits will be stricken.[2]

A.     *Discrimination and Retaliation Claims Under Title VII*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e *et seq.,* makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(2). The defendants urge the court to dismiss the plaintiff's discrimination and retaliation claims under Title VII for failure to state a claim. The plaintiff's Title VII claims must be dismissed as to defendants Smith,

---

[2]In her opposition to the defendants' motion to strike, the plaintiff argues that the defendants' reply should be stricken as untimely and that the defendants should be ordered to pay her legal fees for the time and cost of responding to the motion to strike. In addition, the plaintiff argues that the defendants are delinquent in filing an answer to her complaint. The plaintiff's arguments are without merit and she is not entitled to receive attorneys' fees. First, as defendants correctly note, under the Federal Rules of Civil Procedure, if a defendant files a motion to dismiss under Fed.R.Civ.P. 12, he need not file an answer until after the court rules on his motion to dismiss. *See* Fed.R.Civ.P.12(a)(4). Second, the defendants' reply brief was timely and thus will not be stricken. Under Fed.R.Civ.P. 6(e), an additional three days are added to the prescribed eleven days for filing a reply when service is made by electronic filing. Thus, because the plaintiff filed her opposition to the motion to dismiss on December 16, 2004, the defendants had until December 30, 2004 to reply, a deadline they met when their reply was filed on December 29, 2004.

Porcari, and Flanagan because they are not proper defendants.³  Under Title VII, "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Service, Inc.,* 159 F.3d 177, 180 (4th Cir. 1998); *Erskine v. Board of Educ.,* 197 F.Supp.2d 399, 405 (D.Md. 2002).  The plaintiff's claims against the MDOT will also be dismissed because she did not initially name the state agency as a defendant in the discrimination charges she filed with the MHRC and the EEOC.  *See Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint.") (citing *King v. Seaboard Coastline R. Co.,* 538 F.2d 581, 583 (4th Cir. 1976)).  While additional charges that are "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" may be permitted in a subsequent Title VII suit, *id.* at 963, the plaintiff had ample opportunity to include MDOT in her initial administrative charges and chose not to; therefore, the current suit should remain confined to the defendants named in the original administrative proceedings.  (*See* Compl. ¶ 13) ("When the original discriminatory actions were taken, the Maryland Department of Transportation headquarters had temporarily taken over control of the management of the Maryland Transit Administration...").

The complaint does, however, sufficiently state a prima facie claim of sex discrimination against the MTA.  In order to state a disparate treatment discrimination claim, a plaintiff must allege facts

---

³Similarly, the due process claims under 42 U.S.C. § 1983 shall be dismissed as to these individuals.  Assuming without deciding that a § 1983 claim has been stated against them, they would benefit from qualified immunity.  *See Wilson v. Lane*, 141 F.3d 111, 114 (4th Cir. 1998) ("[q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotations and citations omitted).
.

demonstrating: (1) that she is a member of a protected class; (2) that her job performance was satisfactory; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside her protected class were treated more favorably. *Frank v. England,* 313 F.Supp.2d 532, 538 (D.Md. 2004). Although a plaintiff is not required to plead a prima facie case of discrimination or satisfy the evidentiary burden established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), in order to survive a Rule 12(b)(6) motion to dismiss, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12, 122 S.Ct. 992, 997 (2002), she nonetheless must plead facts sufficient to support a claim for relief. *Bass v. E.I. Dupont De Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2002).

As a woman, Love is a member of a protected class. According to the facts alleged in her complaint, which at this stage must be construed in a light most favorable to her, her job performance was satisfactory. While the defendants now claim her dismissal was because of safety concerns and Love's failure to accept responsibility for the bus wheel problem, Love's complaint alleges that the bus safety issue did not result from her negligence, but stemmed from problems in the mechanics and safety divisions not under her authority. In fact, the defendants acknowledge that the MDOT Report, "Investigation of Maryland Transit Administration Bus Wheels," did not attribute blame to Love, her office, or any other division leaders, but rather allocated blame throughout the MTA organization. (*See* Defs.' Mot. to Dismiss at 4) (citing Compl., Ex. 4.) Although additional discovery may very well reveal that Love was legitimately demoted, albeit in a clumsy manner, for her failure to adequately ensure the safety of the public bus system, it would be premature to resolve this factual contest at the pleading stage given that Love has alleged facts that, if true, could support a claim for relief under Title VII.

According to Love's complaint, when she was demoted to an inferior position, the MTA initially refused to offer her any explanation for the demotion, though her immediate supervisor told her she had done nothing wrong.  The demotion qualifies as an adverse employment action because it had a "significant detrimental effect" on the plaintiff.  *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir. 1999).  She suffered the loss of a job title and a cut in her pay grade.  Further, she was moved to an inferior office and not given a job description, causing her to experience a significant decrease in level of responsibility.

Finally, Love has alleged that similarly situated male employees were not treated unfavorably, as she was.  She claims that she was singled out by the agencies to serve as a public scapegoat for the bus wheel problem, and that she was treated in this way because she was a woman.  Specifically, the complaint alleges that at least two male managers who were responsible for mechanics and safety, Edward Connelly, former Chief of Quality Control, and Larry Hewitt, Director of Safety, as well as the male mechanics under their supervision, never suffered any repercussions for the bus wheel problem.  (Compl. ¶ 35.)[4]  Additionally, Love alleges she was not allowed to compete for her former position,

---

[4]The defendants contend that because the complaint fails to specify the exact pay grade and job duties relative to the plaintiff, and because these two individuals were not in an acting position, the court cannot speculate that they were in fact similarly situated to Love.  (*See* Defs.' Mot. to Dismiss at 7.)  Love's allegations as to the similarly situated male managers are sufficient at the pleading stage.  A plaintiff is not required "as a matter of law to point to a similarly situated [male] comparator in order to succeed on a [sex] discrimination claim."  *Bryant v. Aiken Reg'l Medical Centers, Inc.,* 333 F.3d 536, 545-46 (citing *Columbia Colleton Med. Ctr.,* 290 F.3d 639, 648-49 n.4) (holding that plaintiff need not prove she was better qualified than a successful applicant if other circumstantial evidence suggests discrimination).

though other males were encouraged to apply and indeed were ultimately selected for the management role.

The above alleged facts, if true, could support a claim for sex discrimination and retaliation in violation of Title VII. The defendants, therefore, are not entitled to dismissal and this case should proceed with discovery.

The plaintiff has also alleged sufficient facts to state a claim for retaliation in violation of Title VII. Section 704(a) of Title VII, 42 U.S.C.A. §§ 2000e-3, makes it unlawful for an employer to discriminate against an individual employee because she has "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." In order to state a claim for retaliation in violation of Title VII, a plaintiff must plead facts showing that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir. 2001). The defendants concede that Love engaged in protected activity when she filed complaints with the MHRC in December 2002 (including a motion for reconsideration of the MHRC finding in March 2004), and the EEOC in April 2004, but they assert that the plaintiff has failed to satisfy the latter two elements. First, they argue that the alleged retaliatory conduct does not rise to the level of an adverse employment action. Second, they contend that Love has failed to demonstrate a causal connection between her protected activity and the alleged retaliatory conduct.[5]

---

[5]In their motion to dismiss, the defendants argue that Love was not actually demoted in July 2004, but rather faced "the possibility of a reassignment to lower level duties without a change in pay"

Adverse employment actions include actions such as "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone,* 178 F.3d at 255. In addition, the Supreme Court has stated that a "significant change in benefits" or a "reassignment with significantly different responsibilities" can also constitute a tangible or adverse employment action. *Burlington Indus. Inc., v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268 (1998). Here, the plaintiff alleges a number of facts to support her retaliation claim, some more significant than others. She maintains that when she returned from medical leave for stress in January 2003, she discovered she had been assigned to a "tiny cubical [sic] with no assignments or job duties, or job title, [and] was singled out and ostracized by her male superiors." (Compl. ¶ 38.) According to Love, she requested to meet with Robert Smith, the MTA Administrator, to discuss her employment situation but was told by Irwin Brown, the former chief counsel for the MTA, that, because of pending legal issues, she could not meet directly with Smith. (*Id.*) After the MHRC's decision was issued in April 2004, Love requested and was granted a meeting with John Gowland, General Manager of the MTA, and informed him of "insensitive remarks made by a male colleague" related to her status as Manager of Bus Operations, a position the colleague knew she had been removed from. (*Id.* ¶ 38.) The plaintiff alleges that although this meeting put Gowland on notice of the alleged continuing discriminatory treatment suffered by plaintiff, no action was taken by him to address the situation. (*Id.*)

---

and that this is too speculative to affect the terms or conditions of employment. (*See* Defs.' Mot. to Dismiss at 13.) The complaint clearly states, however, that "[o]n July 20, plaintiff learned that she had been reassigned to a position that demoted her classification standard, which placed plaintiff in a position two grades lower..." and that she confirmed this with her immediate supervisor, Robert Mowry. (Compl. ¶ 42.)

14

Next, Love contends that she was demoted in July 2004 in retaliation for her filing a complaint with the EEOC, and that her supervisor, Robert Mowry, informed her that he stepped in to prevent her dismissal. She also asserts that a colleague told her that he heard from another coworker that she had been targeted for dismissal because of her discrimination complaint.

While it may be possible for rumors and "insensitive" remarks about a plaintiff to rise to the level of retaliatory harassment and constitute adverse employment actions, to proceed with this theory a plaintiff "must show that her workplace was both subjectively and objectively hostile." *Von Gunten,* 243 F.3d at 870 (finding that "office unpleasantries that were at most the result of 'predictable tension' in the workplace following the lodging of discrimination and retaliation charges" were non-actionable) (internal citation omitted). Love's allegations regarding insensitive comments and ostracization do not satisfy this standard. Other allegations in her complaint, however, sufficiently describe adverse employment actions which could support a retaliation claim. If, as Love alleges, she was demoted in July 2004, and given no specific job title or duties, excluded from meetings, and denied opportunities to use her skills or advance her career, these actions would satisfy the definition of an adverse employment action. *Id.* at 865 (actions which adversely affect "the terms, conditions, or benefits" of employment, such as reducing job responsibilities and professional status, constitute adverse employment actions) (internal quotations and citations omitted).

Additionally, the complaint alleges a sufficient causal connection between the adverse employment actions and Love's protected activity. She first filed a complaint with the MHRC in December 2002. She filed a request for reconsideration in March 2004 after the MHRC found there was no probable cause to believe she had been discriminated against and, once that request was

15

denied, she filed a complaint with the EEOC in April 2004.  Approximately three months later, shortly after Love received a right to sue letter from the EEOC on July 1, 2004, she was demoted a second time, to a position two pay grades lower than her previous post.  While the time elapsed between the protected activity and the demotion may weaken the inference of a causal relationship, when coupled with the circumstantial evidence proffered by Love that her immediate supervisor and another coworker informed her that she had been targeted for dismissal because of her discrimination complaints, a reasonable inference can be made that the demotion was causally related.[6]  *See King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003) (observing that the two and a half month time period between the plaintiff's protected activity and his termination was "sufficiently long so as to weaken significantly the inference of causation between the two events" but that the plaintiff had nonetheless stated a prima facie retaliation claim due to the circumstances of his employment); *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004) (noting that generally "the passage of time (nine to ten months in this case) tends to negate the inference of discrimination," but that the plaintiff had established a prima facie case because it could be inferred that the employer retaliated at the first opportunity).

Finally, the defendants contend that Love cannot bring a retaliation claim because she did not raise it in her initial charge with the MHRC and the EEOC and therefore has not exhausted administrative review.  (*See* Defs.' Reply at 3.)  This reasoning does not apply to the present case, because Love's retaliation claims are based on actions that occurred after she filed discrimination claims with the MHRC and the EEOC.  Under these circumstances, the Fourth Circuit has held that "a

---

[6]Of course, after discovery, the plaintiff may offer direct evidence to support the argument that she had been targeted for dismissal and demoted because of her protected activity.

retaliation claim relates back to the original charge of discrimination, such that 'a plaintiff may raise the retaliation claim for the first time in federal court." *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992).

B.   *Due Process Claim*

The plaintiff's due process claim, brought pursuant to 42 U.S.C. § 1983, however, must be dismissed for failure to state a claim. Love contends that she had a legitimate property and liberty interest in her position and therefore the MTA violated her due process rights when it demoted her without providing notice, a hearing, or an explanation for the involuntary reassignment, as the agency's policies and procedures require. (Compl. ¶¶ 47-48.) "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705 (1972). An employee of a state or local government agency has a protected property interest in continued public employment only if he can show a "legitimate claim of entitlement" to his job under state or local law. *Id.* at 577-78. Such a property interest can be created by statutes, ordinances, or rules. *Rogosin*, 197 F.Supp.2d at 353; *Bowers v. Town of Smithsburg, Md.,* 990 F.Supp. 396, 398 (D.Md. 1997). A public employee in an at-will position, however, cannot claim any Fourteenth Amendment due process protection. *See Pittman v. Wilson County,* 839 F.2d 225, 229 (4th Cir. 1988); *Rogosin v. Mayor, City Council of Baltimore,* 197 F.Supp.2d 345, 353 (D.Md. 2002). In the absence of specific laws, regulations, or employer rules specifying otherwise, state and local employees in Maryland are generally considered at-will employees. *See Demesme v. Montgomery County Gov't,* 63 F.Supp.2d 678,

17

682 (D.Md. 1999) (citing *Adler v. American Standard Corp.,* 432 A.2d 464, 467 (Md. 1981)).

As an Executive Service employee for the MTA, Love was considered an at-will employee. Maryland law provides that: "Employees appointed as Executive Service employees shall be hired based on their experience or other relevant qualification for the position. Executive Service employees serve at the pleasure of the appointing authority." Code of Md. Regulations, 11.02.02.01C. The MTA provides Executive Service employees who have been terminated or disciplined the right to a hearing that is limited to the legal and constitutional bases for the discipline or termination. Code of Md. Regulations 11.02.08.7B. According to the defendants, because Love served as the Manager of Bus Operations in an acting capacity, she had no property interest in the position and no right to a hearing once she was removed from the position and assigned to a job with a different classification. Love contends that "departmental policies and procedures regarding employees and demotions created a reasonable expectation that [her] supervisory position constituted a property and liberty interest" and that the defendants refused to follow the standard procedures for demotions. (Compl. ¶¶ 47-78.) Under certain circumstances, an express or implied promise of continued employment may create a protected property interest. *Roth*, 408 U.S. at 576-77. There must be more than an "abstract" or "unilateral" claim to continued employment; rather, there must be a "legitimate claim" to continued employment that is secured by state statute or the employer's rules or policies. *Id.* at 577-78. The complaint does not identify any state law or MTA rules or procedures that created a "legitimate claim" to remain in an "acting" Executive Service role, or to continue in that role in a permanent basis. Love, therefore, has failed to state a claim for deprivation of a protected property interest in violation of the due process clause of the Fourteenth Amendment.

Love also claims that the defendants' actions deprived her of a liberty interest in violation of her due process rights. A state employee's liberty interest in his job may be implicated if the employer's actions affect her "good name, reputation, honor, or integrity;" in such cases, "notice and an opportunity to be heard are essential." *Roth,* 408 U.S. at 573 (internal quotations and citations omitted).  To state a claim for a protected liberty interest, the plaintiff must allege facts showing that her employer made charges that might seriously harm her reputation or standing, that the charges were made public by the employer, and that they were false.  *See Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n.5 (4th Cir. 1988); *Rogosin,* 197 F.Supp.2d at 353-54.  Mere charges regarding "incompetence or unsatisfactory job performance" are not sufficient; in order to implicate a protected liberty interest, they "must at least imply the existence of serious character defects such as dishonesty or immorality;" *Zepp v. Rehrmann,* 79 F.3d 381, 388 (4th Cir. 1996).  The plaintiff's complaint is bereft of any allegations suggesting that the MTA attacked her moral character or reputation in public.  The plaintiff, therefore, has failed to state a claim for a due process violation of a protected liberty interest.

## III.  Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted as to the Title VII claims against the individual defendants Smith, Porcari, and Flanagan, as well as the MDOT, and as to the due process claim against all defendants.  The defendants' motion to dismiss the Title VII sex discrimination and retaliation claims against MTA will be denied.   In addition, the defendants' motion to strike the plaintiff's surreply will be granted.

A separate order follows.

|  |  |
|---|---|
|   May 17, 2005   |   /s/   |
| Date | Catherine C. Blake |
|  | United States District Judge |